UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN SLAUGHTER,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>CATHOLIC UNIVERSITY OF AMERICA,<br><br>　　　Defendant, | Civil Action No. 23-2703 (JEB) |

## MEMORANDUM OPINION

Plaintiff Steven Slaughter — who was a campus police officer for Defendant Catholic University of America — seeks compensation for unpaid wages under federal and D.C. labor laws (for himself and a putative class). This Court previously dismissed Plaintiff's relatively skeletal Complaint for failure to state a claim. With the Court's leave, he filed a First Amended Complaint, which Catholic has again moved to dismiss on similar grounds. Apparently seeing some merit in the Motion, Slaughter has since moved for leave to file a Second Amended Complaint — rather than defending the FAC on its own terms — and opposes Catholic's Motion to Dismiss in reliance on the SAC's freshly pled facts. Catholic, for its part, opposes the Motion to Amend as both futile and unduly prejudicial, maintaining that the SAC suffers from the same deficiencies as its forerunners.

This procedural Gordian knot, fortunately, is easily severed. The Court agrees with Plaintiff that the proposed amendment is not futile and that Catholic is not unduly prejudiced by it. It will, accordingly, grant him leave to file his SAC and deny the Motion to Dismiss the FAC as moot. Catholic remains free to seek dismissal again if it so chooses.

1

I.  **Background**

A brief recap of the relevant facts and any new and non-conclusory SAC allegations is in order. The Court will assume their truth, as is required at this stage.

Slaughter worked in the Department of Public Safety at Catholic between March 3, 2008, and October 25, 2021. See ECF No. 18-2 (SAC), ¶ 4. Throughout that time, he and other campus police officers "were not paid all wages earned on their regular paydays." Id., ¶ 22. The University shortchanged them in at least five specific ways. First, although they were typically scheduled to work five days and take two days off each week, Catholic would cause them to work more than five consecutive eight-hour days at least once every eight weeks, as part of a "standing practice," without paying overtime for the excess hours. Id., ¶¶ 23–24. Second, officers were required to arrive thirty minutes prior to each eight-hour shift to "obtain briefings and participate in rollcall" without receiving compensation for that time. Id., ¶ 31. Third, Catholic's timekeeper, Dorothy Swinson, "routinely adjusted . . . officers' timecards to reduce the amount of time worked and overtime recorded" without consulting the affected officers. Id., ¶ 42. Fourth, the University did not compensate officers for their thirty-minute meal breaks, even though it required them to "listen to and answer [their] radios" in case of emergency during that time. Id., ¶ 38. Fifth, Catholic did not pay its officers for time spent responding to emergencies during meal breaks or for meal breaks that they were forced to skip altogether because of staffing shortages. Id., ¶¶ 39–40.

On August 3, 2023, Slaughter filed the instant suit on behalf of himself and a class of similarly situated University employees in D.C. Superior Court. See ECF No. 1-2 (Compl.) at 1. He alleged that Defendant did not "timely pay wages" — particularly overtime wages — in violation of the D.C. Wage Payment and Collection Law (WPCL), D.C. Code §§ 32-1301 *et seq.*

(Count I), the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.* (Count II), and the D.C. Minimum Wage Act (MWA), D.C. Code §§ 32-1001 *et seq.* (Count III). Id., ¶¶ 52–73.

Invoking federal-question jurisdiction, Catholic then removed the action to this Court on September 15, 2023, see ECF No. 1 (Notice of Removal), and the Court dismissed the Complaint two months later for failure to state a claim. See ECF No. 11 (Order on First MTD). Plaintiff responded with a First Amended Complaint last December, see ECF No. 14 (FAC) — which Catholic has moved to dismiss, see ECF No. 16 (Second MTD) — and then a Motion for Leave to file a Second Amended Complaint just last month, see ECF No. 18 (Mot. to Amend), while briefing on the second dismissal Motion was still in progress. The SAC lists the same three causes of action as the prior Complaints but alleges new facts (the most salient of which are set forth above). See SAC, ¶¶ 69–90.

## II.     Legal Standard

For the sake of judicial efficiency, the Court will not segregate the two pending Motions. It will instead consider solely the Second Amended Complaint — Plaintiff's third stab at making out a case. This Opinion thus addresses his Motion for Leave to file that Complaint and Catholic's arguments as gleaned from its Opposition and second Motion to Dismiss.

A plaintiff may amend his complaint once as a matter of course within 21 days of serving it or within 21 days of the filing of a responsive pleading. See Fed. R. Civ. P. 15(a)(1). Otherwise, he must seek consent from the defendant or leave from the court. The latter "should [be] freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether to grant leave to file an amended complaint, courts may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

3

amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962). In this Circuit, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Under Rule 15, furthermore, "the non-movant generally carries the burden in persuading the court to deny leave to amend." Nwachukwu v. Karl, 222 F.R.D. 208, 211 (D.D.C. 2004).

It is clear, however, that amendment should not be permitted if it would be futile. In other words, if the amendment is facially infirm, courts need not grant leave. See In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss.") (citing Foman, 371 U.S. at 182, for proposition that "'futility of amendment' is permissible justification for denying Rule 15(a) motion"); James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (same).

### III. Analysis

Catholic insists that Plaintiff's proposed amendment should be denied as both futile and unduly prejudicial. The Court considers each argument in turn.

#### A. Futility

Defendant's futility contention rests on the same objections that it raised in its first and second Motions to Dismiss — namely, that Slaughter's wage claims are all preempted (or precluded, in the case of the FLSA claim) by the Labor Management Relations Act and that the SAC otherwise fails to state a claim for unpaid wages. The Court will therefore consider all supporting points and authorities raised in the briefing on the second Motion to Dismiss (in addition to the briefing on the Motion for Leave to Amend). Under the facts Plaintiff now pleads, however, neither argument is persuasive.

1. *Preemption*

Begin with preemption. Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). This provision endows federal courts with jurisdiction over controversies involving collective-bargaining agreements and authorizes them to "fashion a body of federal law for [their] enforcement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 403 (1988). "Accordingly, section 301 completely preempts any action predicated on state law if that action is either: (1) founded upon rights created by a collective bargaining agreement; or (2) substantially dependent upon analysis of that agreement." Berry v. Coastal Int'l Sec., Inc., 968 F. Supp. 2d 104, 110 (D.D.C. 2013); Lingle, 486 U.S. at 406, 413 (section 301 preempts state-law claims that "depend[ ] upon the meaning of" or "require[ ] the interpretation of" a collective bargaining agreement). Some circuit courts have concluded that FLSA claims likewise dependent on a CBA are also precluded by Section 301. See, e.g., Vadino v. A. Valey Engineers, 903 F.2d 253, 264–67 (3d Cir. 1990); Martin v. Lake Cnty. Sewer Co., Inc., 269 F.3d 673, 679 (6th Cir. 2001); see also Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union, 23 F.4th 836, 843 n.3 (9th Cir. 2022).

Catholic maintains that Plaintiff was bound by a collective-bargaining agreement between his union and the University and that "[n]o amount of re-pleading can change the fact that the CBA must be interpreted and applied in order to determine any alleged entitlement by Plaintiff to unpaid wages or overtime pay." ECF No. 20 (Opp.) at 4; Second MTD at 22 n.8. But assessing such an argument would require the Court to consider the terms of the CBA itself.

5

This it may not typically do without converting the Motion to Dismiss into one for summary judgment and affording Plaintiff reasonable discovery (the very step Catholic seeks to avoid). See Fed. R. Civ. Pro. 12(d) (if court converts motion, "[a]ll parties must be given a reasonable opportunity to present all [pertinent] material"); accord Convertino v. Dep't of Justice, 684 F.3d 93, 99 (D.C. Cir. 2012) ("[S]ummary judgment is premature unless all parties have had a full opportunity to conduct discovery."); Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 203 (2d Cir. 2013) ("We cannot affirm the dismissal on the basis of LMRA preemption pursuant to Rule 12(b)(6) because such dismissal was premised on a matter outside of the pleadings [*i.e.*, CBAs attached to defendant's motion to dismiss], and was, therefore, inappropriate.").

In the hope of averting this obvious pitfall, Catholic argues that such conversion is unnecessary because the CBA is already incorporated into the Complaint by reference. More specifically, the Complaint, in furtherance of its wage claims, discusses Catholic's "control" and "oversight" of campus officers, including Slaughter, and its policies and practices regarding "payment of wages and overtime," "work schedules and work conditions of employees," "rate and method of pay," "maintenance of employee records," and "compensable [work] hours," which Catholic says were specifically "negotiated" by the union and "set forth in the CBA." See Second MTD at 10 (quoting FAC, ¶¶ 12, 14, 20, 23, and 38-40). The Court is not convinced.

The incorporation-by-reference doctrine allows courts to consider documents "not attached by the plaintiff, but . . . referred to in the complaint and integral to the plaintiff's claim." Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (cleaned up). A document is "integral" to the complaint if it "form[s] the basis for a claim or part of a claim." Id. But the CBA here is not explicitly referenced in the SAC and does not appear to form the basis

6

for any part of Slaughter's claims. Those claims, rather, arise from "non-negotiable and mandatory right[s] originating outside of the CBA" — namely, wage-payment and overtime requirements under the WPCL, MWL, and FLSA. See Sanchez-Angeles v. Universal Prot. Serv., LLC, 2022 WL 16921525, at *2 (D.D.C. Nov. 14, 2022) (citation omitted); see also Carrillo v. Dandan Inc., 51 F. Supp. 3d 124, 129 (D.D.C. 2014) (noting "long-held view" that "FLSA rights cannot be abridged or otherwise waived by contract"); Hernandez v. Stringer, 210 F. Supp. 3d 54, 63 (D.D.C. 2016) (noting similar principle as to WPCL and MWL).

  To be sure, the SAC now alleges that campus police officers are entitled to 30-minute meal breaks and sets out three possible eight-hour patrol shifts, see SAC, ¶¶ 25, 37, and those policies appear to be derived from the CBA. See Opp. at 4. But the gravamen of this suit is the failure to pay wages for allegedly compensable work performed during those breaks and during or outside of shift hours (not a violation of the meal-break or shift policies themselves). The policy-related allegations — serving an ostensibly contextual purpose — provide no basis for considering the CBA at this stage. See Horton v. Espindola, 319 F. Supp. 3d 395, 401 (D.D.C. 2018) ("merely . . . alluding to the CBA[] does not make [it] an 'integral' part of the pleading"); Freeman v. MedStar Health Inc., 87 F. Supp. 3d 249, 259 & n.4 (D.D.C. 2015) (declining to consider CBA in connection with plaintiffs' wage claims, even though it "contain[ed] numerous provisions that relate to hours, including meal breaks"); cf. Sanchez-Angeles, 2022 WL 16921525, at *2 (reference to grievances raised with union insufficient to incorporate CBA into complaint).

  Catholic also argues that the CBA may be considered in connection with its argument that the Court lacks subject-matter jurisdiction because Slaughter failed to exhaust the CBA's grievance procedures. See Second MTD at 8–9, 29–30; see also Am. Postal Workers' Union v.

7

United States Postal Serv., 646 F. Supp. 2d 1, 2–3 (D.D.C. 2009) (court "may consider materials outside the pleadings to determine whether it has jurisdiction over the claim."). But it is far from clear that a failure to grieve CBA claims would even implicate this court's subject-matter jurisdiction. See Staudner v. Robinson Aviation, Inc., 910 F.3d 141, 146–48 (4th Cir. 2018); but see Nat'l Football League Players Ass'n v. Nat'l Football League, 874 F.3d 222, 226–27 (5th Cir. 2017). As a basis for considering the CBA without opening discovery, in any event, that argument is circular. There are no claims under that agreement to grieve unless the Court finds that the D.C. and FLSA wage claims are completely preempted, but, as just noted, adjudicating the preemption issue is impossible without considering the agreement.

As a final gambit, Catholic proposes in a footnote that the Court could consider the CBA and convert the Motion to Dismiss into one for summary judgment without opening discovery because "no amount of discovery would alter [the CBA]," which "direct[s] the outcome of [Slaughter's] allegations." Second MTD at 12 n.6. This argument, however, fails to appreciate that the outcome of any preemption defense depends not just on the content of the CBA, but its bearing on Plaintiff's theory of liability. Slaughter has alleged unpaid wages arising from at least five circumstances, each of which may implicate CBA provisions in different ways (or not at all). If, for example, Catholic has indeed inaccurately recorded Slaughter's work hours, see SAC, ¶¶ 28, 42, and that happens to be the primary evidentiary basis for his overtime claims post-discovery, then the only issue may well be the number of such hours and the applicable rate of pay. Adjudicating Plaintiff's claims in that case might not "substantially depend" on an interpretation of any CBA provision. See Vera v. Saks & Co., 335 F.3d 109, 115 (2d Cir. 2003) ("Nor would a state claim be preempted if its application required mere referral to the CBA for 'information such as rate of pay and other economic benefits that might be helpful in

determining the damages to which a worker prevailing in a state-law suit is entitled.'") (quoting Lingle, 486 U.S. at 413 n.12); Akinsinde v. Not-For-Profit Hosp. Corp., 2018 WL 6251348, at *3 (D.D.C. Nov. 29, 2018) (finding that trier of fact would not need to "interpret" rate of pay, though such rate was determined by CBA). Without the clarity that discovery may provide, deciding preemption now would be premature.

2. *Failure to State Claim*

Next up is whether Slaughter has once again failed to state a claim. Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)). For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

How this standard should be applied in the context of overtime claims, as discussed more extensively in the Court's prior Opinion, is gradually coming into focus as more circuits address the issue. See Slaughter v. Catholic University of America, 2023 WL 7695798, at *2–3 (D.D.C. Nov. 15, 2023). Plaintiffs clearly need not estimate their total overtime hours or identify the particular weeks in which they worked over forty hours without receiving time-and-a-half pay.

9

Id. at *3. Equally clear, however, is the inadequacy of a complaint that baldly asserts that overtime hours were worked without adequate compensation but provides no further detail. Id. Rather, as multiple circuits have held, the complaint must provide sufficient factual context to give rise to an inference that there is at least one workweek in which the plaintiff worked overtime and was undercompensated. See, e.g., Hall v. DIRECTV, LLC, 846 F.3d 757, 777 (4th Cir. 2017) ("[T]o make out a plausible overtime claim, a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium for those overtime hours."); Davis v. Abington Memorial Hosp., 765 F.3d 236, 243 (3d Cir. 2014) ("[A] plaintiff [need not] identify the exact dates and times that she worked overtime. For instance, a plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of those forty-hour weeks, would suffice.").

      The Court need not examine every factual basis for liability advanced in support of the SAC's three claims in order to find that it now pleads sufficient facts to survive dismissal. It alleges, in particular, that campus officers (including Slaughter) were typically scheduled to work five days and take two days off each week but that, as a "standing practice," Catholic would "rotate" each officer's two days off once every eight weeks, causing him to work more than five consecutive eight-hour days, without paying overtime for the excess hours. See SAC, ¶¶ 23–24. The Court understands this allegation to mean that Plaintiff periodically worked overtime as part of his regular work schedule without receiving the appropriate compensation. As to all three of his claims (which appear to be premised in large part on overtime violations), that allegation is enough. See Herrera v. Comme des Garcons, Ltd., 84 F.4th 110, 115 (2d Cir. 2023) (complaint

10

sufficiently alleged overtime based on fact that "[p]laintiffs' regularly scheduled work hours consisted of five shifts each week, and that each shift lasted between eight and three-quarter hours and nine hours, amounting to between 43.75 hours and 45 hours of work per regular week"); Conner v. Cleveland Cnty., N. Carolina, 22 F.4th 412, 427–28 (4th Cir. 2022) (complaint sufficiently alleged overtime claim based on fact that plaintiff "worked the 24 hours on-48 hours off schedule during one or more work weeks of her employment," which necessarily meant he must have worked "either 48 hours or 72 hours" on each such week); Galloway v. Chugach Gov't Servs., Inc., 199 F. Supp. 3d 145, 150 (D.D.C. 2016) (complaint "comfortably" satisfied pleading standard by alleging (among other things) a "failure to pay overtime even when [plaintiffs] worked more than five[] eight-hour shifts a week").

    B.  Undue Prejudice

The University protests, alternatively, that it is unduly prejudiced by permitting the filing of the SAC in at least two respects. First, it "has already been forced to file two motions to dismiss, both of which have effectively been successful," and being "forced" to file a third motion to dismiss would entail "further time and cost." Opp. at 12. Second, it suspects that Plaintiff is conducting a "fishing expedition" and insists that it should not be "forced to expend the substantial time, resources, and money that discovery in this case will require or be forced to affirmatively 'prove its innocence.'" Id. at 12–13. Although Catholic is correct that it should not take a prepared plaintiff three swings to finally make contact, these contentions "relate to the ordinary costs and inconveniences incidental to defending against any lawsuit" and "fall short of the 'good reason' required to deny leave to amend." Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz, 793 F. Supp. 2d 311, 325 (D.D.C. 2011) (quoting Willoughby v. Potomac Elec. Power Co., 100 F.3d 999, 1003 (D.C. Cir. 1996)); see also Dave v. Dist. of

Columbia, 811 F. Supp. 2d 111, 120 (D.D.C. 2011) ("[T]he burden of undertaking discovery, standing alone, does not warrant denial of a motion to amend.") (citation omitted).

Such inconvenience is mitigated, in any event, by the fact that the case is still in its early stages and Catholic has already had an opportunity to argue the futility of the latest amendments in its Opposition on the same grounds raised in its Motions to Dismiss.

\*   \*   \*

The Court is mindful, ultimately, that leave to amend should be "freely give[n]" when "justice so requires." See Fed. R. Civ. P. 15(a)(2). In light of such standard, the fact that the amendments are not futile, and the lack of undue prejudice, the Court will grant leave to file the SAC. Catholic may, of course, move to dismiss again, bearing in mind that the Court has already considered all the arguments raised in its second Motion to Dismiss in connection with this Opinion.

### IV.   Conclusion

For the foregoing reasons, the Court will grant Plaintiff's Motion for Leave to file the Second Amended Complaint and deny Defendant's second Motion to Dismiss as moot. An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: March 27, 2024